**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 2:18-285** |
| | § | **CIVIL NO. 2:19-229** |
| **GARY REED MASSEY,** | § | |
| **Defendant/Movant.** | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Gary Reed Massey filed a motion to vacate, set aside, or correct sentence pursuant to 18 U.S.C. § 2255 (D.E. 32), to which the United States of America (the "Government") responded (D.E. 41). For the reasons set forth below, Movant's § 2255 motion is denied.

## I. BACKGROUND

On May 15, 2018, Movant pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a). He was offered the Government's standard written plea agreement, which he rejected. Minute Entry May 15, 2018. The Court found that he was competent to enter a plea, aware of the nature of the charges against him and the consequences of entering a plea, and that he made a knowing and voluntary plea supported by an independent basis in fact containing each of the elements of the charged offense. D.E. 14, 15.

The Presentence Investigation Report (PSR) assigned a base offense level of 20, and 2 levels were added under U.S.S.G. § 2B3.1(b)(1) because property of a financial institution was taken. PSR, D.E. 19 §§ 20, 21. Despite pleading guilty, Movant did not receive a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3El.l

1

because, while he was in custody of the Coastal Bend Detention Center awaiting sentencing, he destroyed property and engaged in threats towards corrections staff on six separate occasions, four of which occurred after he pled guilty. *Id.* §§ 27, 40–45.[1] The PSR also reported that Movant stated he suffered from intermittent explosive disorder, post-traumatic stress disorder, and anxiety. *Id.* § 57. Medical records at the time indicated that Movant was being administered Prozac for mood stability, Klonopin for anxiety, the antidepressant Escitalopram Oxalate, and the antipsychotic medication Risperidone. *Id.* § 59.

Defense counsel filed written objections to the PSR, arguing that Movant should not be denied acceptance of responsibility because the allegations of criminal conduct while in custody were merely allegations, and no criminal charges against Movant were ever pursued. D.E. 18. Probation responded that while Movant's actions did not result in criminal charges, each incident nonetheless constituted criminal conduct and was acknowledged by Movant and handled administratively. D.E. 20. The Government responded at sentencing that criminal charges need not be filed because Movant disrupted government function based on the amount of damage done, the number of times Movant had to be extracted from his cell by corrections staff, and the follow-up investigation by the U.S. Marshals Service, citing U.S.S.G. § 5K2.7.[2] The Court overruled Movant's

---

1. "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.3.

2. "If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified

objection at sentencing and adopted the PSR without change. With a base offense level of 22 and a criminal history category of III, his advisory Guideline sentencing range was 51–63 months' imprisonment. The Court ultimately sentenced Movant to 51 months, the lowest end of his Guidelines.

The Court then informed Movant that he had the right to file an appeal within 14 days and that he needed to advise his attorney if he wished to appeal. 10/4/2018 Sent. Tr., D.E. 39 at 11:17-22. After the Court admonished Movant regarding his appellate rights, defense counsel asked the Court for a moment to confirm that Movant understood his sentence because, as Movant told the Court, "I just spaced out. Sorry." *Id.* at 11:24–12:13. Movant then affirmed to the Court that he understood his sentence. *Id.* at 12:14-16. Recognizing that Movant's "mental health issues need to be addressed primarily," the Court recommended that Movant be placed in a facility that offers a mental health program and services. *Id.* at 13:7; D.E. 30, p. 2.

Judgment was entered on October 19, 2018. Movant did not appeal. He filed the present motion on July 31, 2019. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises a single ground for relief:

> During my plea negotiation process I was advised by my attorney that I would receive a three (3) points deduction for 3E1.1 (accepting responsibility and timely manner upon the court). I never received that deduction. My attorney conveyed

---

when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference." U.S.S.G. § 5K2.7

that a petition would be filed directly after my sentencing hearing to raise this claim. However; none was ever raised, filed nor submitted on my behalf as request by me and required by law . . . My attorney conveyed that this claim would be raised on appeal.

D.E. 32, p. 4.

## III. LEGAL STANDARDS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In addition, "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel (IAC) allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on an IAC claim, a movant must demonstrate that his or her counsel's

performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

### C. Failure to File Appeal

The law is clear that if a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance, entitling the defendant to an out-of-time appeal. *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000). As the Fifth Circuit held in *Tapp*, if a defendant "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and [he] will be entitled to an

out-of-time appeal, regardless of whether he is able to identify any arguable meritorious grounds for appeal . . . ." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

In cases where the defendant fails to instruct counsel to file a notice of appeal, the court must determine "whether counsel in fact consulted with the defendant about an appeal." *Flores–Ortega*, 528 U.S. at 478. To "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

## IV. ANALYSIS

The Court set an evidentiary hearing on Movant's motion for January 15, 2020; however, it was delayed after Movant's appointed § 2255 counsel informed the Court that Movant's medications were not being given to him in the same dosage and timing as when he was at the Bureau of Prisons, and Movant did not feel he could go forward with

the hearing that day. Minute Entry Jan. 15, 2020, ERO at 10:23 A.M.–10:27 A.M. A week later, the Court held the evidentiary hearing, during which Movant and his defense counsel, Assistant Federal Public Defender Rachel Braver ("Counsel"), testified under oath. Minute Entry Jan. 23, 2020, ERO at 9:00 A.M.–10:05 A.M.

On direct examination, Counsel testified that when it appeared at sentencing that Movant was having a difficult time understanding what was going on, she asked the Court to confirm that he understood his sentence. After sentencing, Counsel reviewed Movant's appellate rights with him and asked him if he wanted to appeal, which is her standard practice with all her clients. Movant told Counsel he did not want to appeal. He also initialed and signed a form entitled "Decision Regarding My Appeal" indicating "I DO NOT want to appeal." Sent. Hrg. Exh. 1. Movant subsequently wrote two letters to Counsel after sentencing. In the first letter, received December 17, 2018, Movant expressed concerns about certain information in his PSR that required him to be placed in protective custody, but he did not mention an appeal. Sent. Hrg. Exh. 3. In the second letter, dated July 15, 2019, Movant stated in part, "The reason I am writing you this letter is to see if you will represent me once more since you already know my case. I am appealing my case and asking to be brought before a judge for a re-trial." Sent. Hrg. Exh. 2. He did not ask for an update about any appeal he had previously asked Counsel to file. *See id.* Finally, Counsel stated that before Movant's rearraignment hearing, she and Movant reviewed the Government's standard written plea agreement, which included a provision stating that he would lose credit for acceptance of responsibility if he committed another crime while awaiting sentencing.

On cross-examination, Counsel stated that she spoke with Movant 10 or 11 times, either in person or on the phone, during this case. He did not seem any different the day of sentencing than at any other time. After sentencing, Counsel met with Movant in the cell block adjacent to the courtroom and consulted with him about the advantages and disadvantages of an appeal. If he had asked her to file an appeal, she would have filed a Notice of Appeal and turned the case over to the appellate division of the Federal Public Defender's Office, as is her standard practice. Regarding Movant's July 2019 letter, Movant stated he was appealing and asked Counsel if she could represent him; however, Movant never asked her to file an appeal, either in that letter or at any other time.

On direct examination, Movant testified that he was "blurry-headed and sedated" the day of sentencing because he was being heavily medicated for his various mental health issues. As a result, he was confused and did not understand what was happening. He recalled that he asked Counsel about an appeal while in the holding cell after sentencing, and Counsel responded that he could file an appeal when he got where he was going. Movant recalled being asked to sign a piece of paper and acknowledged his initials and signature when shown the "Decision Regarding My Appeal" form indicating he did not want to appeal; however, he did not remember ever seeing that form before. He also could not recall it being explained to him that he would lose credit for acceptance of responsibility if he committed any crimes after pleading guilty, because he was also being over-medicated during rearraignment. However, he did remember that he refused to sign the Government's proposed written plea agreement because he did not want to waste the

Government's time and wanted to reserve his right to appeal his sentence "in case [he] was sentenced to a very long time in prison."

On cross-examination, Movant stated that he remembered telling the people next to him "in the stands" at sentencing that he was confused; however, he did not remember telling the Court more than once that he did not understand what was going on.[3] Movant admitted he did not ask Counsel to file an appeal immediately after sentencing but merely asked about an appeal; however, he wrote Counsel a letter at the beginning of December 2018 when he was in the Special Housing Unit, asking her to file an appeal. Movant said he wrote Counsel three letters, not two, "and I've asked for an appeal every time." Finally, when asked why he felt comfortable telling his attorney and the Court he was unable to proceed with an evidentiary hearing on his § 2255 motion on January 15, 2020, due to the recent change in medication, but he did not tell Counsel or the Court he felt blurry and confused at sentencing, Movant responded that he was on a different medication at sentencing.

At the close of the hearing, counsel for Movant and the Government addressed the Court. Movant's attorney argued that Counsel's failure to inquire further about Movant's mental condition and desire to appeal after sentencing was deficient under the totality of circumstances because: (1) Movant had non-frivolous grounds to appeal, namely, the Court's failure to sustain his objection regarding acceptance of responsibility; (2) Movant

---

3. Movant testified at sentencing that he reviewed his PSR with Counsel and understood the Guidelines range in his case. Sent. Tr. at 3:19-24. He further stated that he understood his sentence. *Id.* at 12:14-16. When asked by the Court if there was anything he wished to say, Movant responded, "Ma'am, I understand that for every action there is an equal and opposite reaction. I take responsibility for my actions. I can't control my impulses, and I would like help. And I'm sorry for messing up in custody. That's about it." *Id.* at 5:23–6:2.

refused to sign a plea agreement because he wanted to preserve his right to appeal; and (3) Movant was heavily medicated and unable to knowingly and intelligently tell Counsel that he did not want to appeal. The Government responded that Movant presented no evidence that he ever told anyone he wanted to appeal. To the contrary, Counsel consulted with Movant in order to make a reasonable attempt to determine whether he wanted to appeal, and Movant explicitly told Counsel—and confirmed in writing—that he did not want to appeal. He acted normally to Counsel at sentencing based on her 10–11 previous interactions with him, and he told Counsel and the Court that he understood what was going on. Finally, if the Court is to take Movant's word that he was so heavily medicated at sentencing that he did not remember signing a form indicating he did not want to appeal, then it is unbelievable that he remembers inquiring about an appeal and Counsel responding that he could take care of it later.

Having considered the testimony and demeanor of both witnesses and the parties' arguments, the Court finds that Counsel was credible, while Movant was not. The Court further concludes that Counsel adequately consulted with Movant regarding an appeal, Movant explicitly told Counsel he did not want to appeal, and no rational defendant would want to appeal under the circumstances of this case.[4] Counsel was therefore not ineffective for failing to file an appeal on Movant's behalf. This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."

---

4. An appeal of the Court's denial of the three-level reduction for acceptance of responsibility would have been meritless for the reasons stated by Probation and the Government. *See supra*, Part I, p. 2.

28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of his claims.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion under § 2255 (D.E. 32) is **DENIED,** and Movant is **DENIED** a Certificate of Appealability.

**ORDERED** ___2 | 3 | 2020___.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE